The Chairman of the WPEE Pension Fund v. Mentor Graphics Corp. Andrew Love for the Appellant Pension Fund. This securities case is a very unusual one. It's unusual because it's a case where the district court found that the complaint adequately pled that the defendant's statements were materially false and that defendants knew their statements were false when they were made, but dismissed the complaint on Sienta grounds. Before turning to how this holding is contrary to this Court's Sienta cases, I would like to highlight for the Court the strongest allegations in support of the district court's finding of defendant's knowledge. And this comes from a separate patent infringement trial that occurred right at the start of the class period against Synopsys, Mentor's competitor, where Mentor executives testified about the outsized importance of its most important emulator customer, Intel, and how Synopsys' acquisition of another company that made a competing emulator allowed it to lure Intel away from Mentor. And not only that, it began competing with all of Mentor's other customers, forcing Mentor to lower its prices, which, as the executive testified, very dramatically changed the competitive landscape. As the Court below found, finding that defendants did not challenge, either below or before this Court, defendants knew before the class period that Mentor had lost virtually all of Intel's business to its competitor. As a result, Mentor had to lower its prices to its other customers and, quote, had actual awareness of a risk that Synopsys would constitute a significant competitive threat to Mentor. But despite this knowledge, defendants concealed these adverse events to investors and to the public, both in its risk warnings, which it merely said What period of time is that statement referring to? The statement? Yeah, that you just read, that circumstance. What's the period? It's the period from before the class period and onward that Synopsys was a competitive threat to Mentor because it took Intel's business for the foreseeable future and it competed with all of Mentor's other customers because Synopsys had a much larger sales force. But wait, didn't Mentor disclose the loss of its largest customer, Intel, in February of 2015? In February, it noted that, yes, that it lost it. It did not say either the duration, which was for the foreseeable future. It didn't mention that it lost Intel to its key competitor and, as a result, it was competing with Mentor's other customers and forced Mentor to lower its prices. So as the court below found, it mentioned Intel. It didn't describe the magnitude or the duration. And so even as late as March 2015, analysts were saying, Well, it looks like Intel may be taking a pause from Mentor as opposed to permanently. But, I mean, that was February, March of 15, and the price didn't drop until November of 2015, right? November 20? Well, in terms of the company's overall revenues? Yeah, well, that was the big price drop of 36%. That's the end of your class period, isn't it? Yes. I mean, so it wasn't as if when this disclosure, we've lost our largest customer, immediately caused the price drop. No, it didn't do it immediately, and part of that is because of the long sales cycles of the emulator. It's an over two-year process where you have technical review and negotiations and manufacture. So even if you're a booking business very early, the impact of bookings doesn't really come to fruition until the end of the process. Well, I guess my point is, one of your claims is you've got to show loss causation between the loss of their largest customer and the price drop. And here you've got months and months past between the disclosure, we've lost our major customer, and when the price dropped. Well, again, and also as the district court found, Independence did not dispute, both with regard to the competition from Synopsys and with their other competitor, Cadence, as well as the semiconductor problems. These were all happening at the same time, and Independence knew that these were serious risks that they did not disclose to the public. And the fact that it didn't show up in revenues until later, they knew that because of the long visibility and their access to feedback. So they knew these were going to be problems, as well as they were already lowering their prices. They were already losing customers to Synopsys. All right, but let's see. Am I right that for the entire fiscal year 2015 and for the first three quarters of fiscal year 2016, Mentor was meeting or exceeding its revenue projections, was it not? Yes. So where's the fraud in the center of that? So even though they were meeting their projections at that point, they knew these problems were happening down the road, and they concealed them. They knew this was going to be this big problem. The district court found that they knew, and Independence did not object to those findings, that they knew the problems with Cadence. They knew the problems with Synopsys, not just losing Intel, but losing market share with regard to their other customers. They knew about these semiconductor consolidations, which were impacting contracts that they had to renew at a lower rate. They knew this because of announcements of consolidations in September 2014, one of their major – IBM, one of their major contracts. And so even though things seemed like they were going fine, they knew there was going to be problems down the road. Or maybe they were just overly optimistic that the future would be like the past. Well, that's what the district court found, was that they were – that even though they knew of these adverse circumstances that were going to hit them and that were already hitting them, that they didn't have to tell the public that because they figured it was going to be okay down the road. That can't – that is not the law, and that can't be the law. That's what Judge Posner said in Tellab's – in the Seventh Circuit, that the fact that a gamble concealing bad news in the hope that it will be overtaken by good news fails is still reckless. This court in Shuneman v. Arena Pharmaceuticals talked about – held a strong inference of Sienter, was pled by defendants. They knew about but failed to disclose the dispute they were having with the FDA about approval of a drug because of a rat study, that they were confident they were ultimately – this was all going to work out. And so they didn't disclose this dispute because of their optimism. And the court found that despite being optimistic, defendants intentionally withheld information that was material to the market's assessment of whether the drug would be approved. And just like here, the mentor and the executives intentionally withheld information material to the market's assessment of how the competition and the consolidations were going to impact. Why don't you sort of pinpoint that in terms of the statements that were – that you – Sure. – that you raised. Where is that reflected in the statements? Okay. So I think one of the main areas of these risk warnings throughout the class period, risk warnings, where here we know from testimony from mentors, executives, that Synopsys was having this devastating impact on them. It changed the competitive landscape. They were losing customers. They lost their major customer. And their risk warning was – Which statement are we talking about? So this is statements – this was made throughout the class period. We're talking statement 4, 8, 18, 26, and 34. Okay. Take one of them and show me – Okay. These are all the exact same. Okay. That risk warnings that competitors may acquire competing companies offering competing products, which could adversely impact their ability to compete. And again, as the district court found – defendants did not object to – they had actual awareness of a risk that would constitute a significant competitive threat. So here they're talking about hypotheticals. Some competitors may acquire competing companies they already had. And the same thing with the semiconductor consolidations. And this is statements 9, 20, 27, and 36, beginning in December of 2014. Risk warnings that customers may acquire or merge with other customers, which could result in fewer customers or reduce customer spending. Of course, I guess the fact that mergers were public knowledge, right? I mean – Mergers were public knowledge, but defendants failed to disclose the impact of those mergers. They knew, as they admitted much later, that these consolidations always affected their revenue growth. Would that be knowledge in the industry by analysts already? Well, the defendants were asked questions about this, and they would sort of downplay this. They said, well, these are – these – they said the outlook would be – is actually improved in response to whether – is there any weakness in bookings or comments about this? And the defendants said – this is statement number 29 in August 2015 – that even a one-year change in outlook doesn't have much ripple through it, meaning it's just not going to impact them. And so they were denying the impact. They were, as the district court said, minimal warnings, without really explaining to the public what was going on. I mean, I noted that most of the cases you cite are ones, you know, where Sienta was found, where there was a direct contradiction between a state – a contemporaneous statement and a fact that was known. I mean, for example, these food and drug cases, where they were implying or saying that we're going to get FDA approval when they didn't – when they knew they didn't have it. Or there's this case, I guess, of what, Reese v. Malone, which was the Ninth Circuit 2014, where the executive says, oh, the pipeline leak was just a low manageable corrosion rate, when they actually had a report that there was a high corrosion rate. But, I mean, do you have anything like that here? What's your smoking gun, where a statement was made by a Malone executive, in fact, right then and there they had to know that was a totally false statement? So the testimony, mentor executives testified in synopsis – in the synopsis case that synopsis was a direct competitor, that it was taking their – not only took their major emulator customer, but were taking other customers. And then in January, the defendant said, mentor has an advantage because there are only essentially two competitors for emulation products, us and Cadence, omitting synopsis altogether. So synopsis was their major competitor. They did not disclose what was going on, not just that they took Intel, but that they were forced to lower – as they testified under oath, were forced to lower their prices to their other customers. That's synopsis because it was a larger sales force was taking business away with regard to other customers. And here they're saying, we're in good shape, but there's only one other competitor, and it's Cadence. Right. I mean, they felt like their mentor thought its technology was way ahead of the other two, right? Well, I mean, that's – I suppose that's a fact question. And, again, whether they were optimistic that they were going to, you know, knowing misstatements of present facts and present risks. So this isn't a case where they were making optimistic statements, and it's like, well, they had a reasonable basis for that opinion. That's not what this is about. This is about risk warnings, opinions, and statements of current fact, in which, as a district court found – and, again, I keep repeating myself – defendants did not dispute. They made materially false statements. They knew those statements were false. And the court below and defendants argue, doesn't matter because they were optimistic that eventually this was going to work out. That would give corporate executives essentially a green light to misstate, mislead the public and say, well, but we figured we were going to get to it later, that it was going to work out. The district court said some of the statements were forward-looking. Yes. So those are separate statements from the ones that I've been talking about. So there are about 22, I think, of the statements we're talking about here. There are another 11 that are forward-looking. With regard to those, the argument is the risk warnings, which we've been talking about, were not meaningful because they talked about risks as hypotheticals that had already occurred. And secondly, they knew those statements were false, based on they knew the impact of cadence and synopsis on the semiconductor consolidations. Do you want to save some time for everybody? Yes, thank you. Okay. Do you concede there are materially false statements? No, I don't concede that there are materially false statements. Because the quality of the statements, just as Your Honor just pointed out, is very different than a statement, for example, saying we have an FDA-approved product and it turns out you don't have an FDA-approved product. The statements here were really mostly in response to questions, for example, tell us how you're doing in the competitive environment. And then there was a discussion, a rather fulsome discussion, in each of those situations about how they were doing. And it's questionable whether those statements were misleadingly incomplete. I will say, Your Honor. You need to start your timer. I'm noticing my clock is not. I will say, Your Honor. We don't want to sit longer than we need to. I'll say this. The plaintiffs have suggested repeatedly in their briefing and today that this is a unique case in which the district court found that the defendants knew that they were making false statements but then somehow got around to saying that there was not a strong inference of say-enter. That really is not what happened in the district court. The district court quite clearly, if you look at the ruling, came to the conclusion that the defendants knew information that would have been material to investors. But there was no finding by the district court, based on the allegations of this complaint, that the defendants knew that they were making false statements. And that's a very significant difference because the law in this circuit and the law in many other circuits is very clear that knowledge of material information, which has not been disclosed, is not tantamount to knowing that you are concealing or a strong inference of say-enter. In fact, in the Rigel case, in which Your Honor Judge Paez was on, the court said, even assuming that the defendant had knowledge of detailed clinical results at the time the allegedly false statements were made, such an allegation does not support a strong inference of say-enter. And it's even more so in this case where you can say the defendants knew something and they didn't disclose it. But if you really look at the types of statements that are being challenged here, these are not black-and-white statements, and they're not being challenged as being black-and-white false, you know, that the sky is green when everybody knows the sky is blue. These are statements about general analyses of how the market was doing, how the competitive landscape was doing. We just heard counsel argue about the synopsis trial and what was revealed or what came out in that trial, about the mentor's position that was described at the trial. And then he says later on they took one position at the trial, but then in these statements didn't really fully relate the same quality of information that had come out at the synopsis trial. How do you respond to that? Yeah, so there's several ways to respond to that, Your Honor. I think what the plaintiff has certainly cited is that when they were asked who the competitors were, all they said was cadence and mentor. And actually that's not true. So many of these statements, when I've gone back and looked at the context of the statements, you find that things which were not alleged in the complaint but are in the record here don't satisfy that. So if you look at the statement supplemental evidentiary record, which is directly on point about this, pages 43 through 45, I'll just read very quickly that the defendant was, in this case it was Mr. Hinckley, at a conference, and he was saying, you know, we focus on who have the number one positions. And, by the way, this is in January of 2015. And then he went on to say, and I'm skipping some irrelevant things, so we are the market share leader in four of the top ten categories. Synopsis is the leader in three, and cadence is in two. And then he goes on. He identified the big three and who the competitors are in a very fulsome discussion. And then we get to the quote. We have some advantages today when he's talking about market leadership in one particular area. There are for all intents and purposes two competitors, ourselves and cadence. So you see what's going on. He said that we're looking at who are the market leaders. There are three of us competing in various different markets. And then he goes to talk about one of those verticals, and it says we are cadence and mentor. It's really similar in a way. I was thinking about this on the way down. You know, if you asked me who were the leading contenders to be the airline that best serves Portland, I would say Alaska Airlines and Delta. And if I said that, it wouldn't mean that I was telling you that United or American Airlines don't exist, it's just this is what I was talking about at the time. And that's precisely what we have here. The fact that the company very fully identified the loss of Intel quite early. In fact, they mentioned it I think three or four times in one particular interview. They raised it on their own, and they didn't say that it had gone up to synopsis. Okay, question, why didn't they say it had gone up to synopsis? Interestingly, at the time, they were involved in a patent infringement trial in which they were proving and ultimately did prove that synopsis was infringing on their device and that, in fact, they had won over Intel using that infringing device, which ultimately they got an injunction against synopsis using. Okay, they didn't mention when they were talking to analysts that it was synopsis who had won the Intel, although they were very fulsome about losing Intel. Obviously, the market knew that there were three competitors. It's obvious that the market could understand that it was either synopsis or cadence. The question is if this court believes that maybe that disclosure should have been better, if this court believes that maybe in the course of suing synopsis to try to keep them from infringing and competing with an infringing patent that they really should have identified synopsis, that's an allowable critique, but it doesn't speak of scienter, and that's really what we're dealing in this case. Let me ask you this. It's clear that the law to apply here, I guess it's in this Verifone Holdings case from 2012, but would a reasonable person deem the inference of scienter at least as strong as any opposing inference? That's the legal test, right? Right. All right, but the district court didn't phrase it that way, did it? I'm looking at page 44 of the district court opinion. This is the magistrate judge, actually, right? However, likewise as previously, I find that the non-culpable alternative inference more compelling than the inference of scienter. But this was a he granted summary judgment here, right? No, no. I'm in motion to dismiss. Well, excuse me. So the statement that I find the culpable alternative inference is not the test. It's what a reasonable person finds. Oh, that's interesting, Your Honor. I actually never thought about it that way. So, I mean, he states the right legal standard, but he doesn't apply it. Now, why should we say, ooh, that's a terrible error and we've got to reverse? Because I think that's really not what's going on here. I mean, the district court or the magistrate in this instance was saying, okay, I am charged under the Private Securities Litigation Reform Act of looking at this, and it's actually very unique to securities the area rather than the rest of civil litigation in the federal courts. So I have to make a judgment whether looking at all the facts holistically, the inference of scienter is at least as strong as the innocent inference. So for him to say, I find, it's really nothing more than him saying, okay, I've done the test that I'm supposed to do, and this is what I conclude from this complaint. It's really not an evidentiary. So you're really saying he's really saying, even though he didn't say that, I find no reasonable person? Yes. And, in fact, that's what he must have been saying because that is the standard, and he did apply the correct standard. And for a court to say this is what I found after reviewing the record extensively is tantamount to saying, I find that the standard has not been met. So, you know, what's really remarkable in this case, and, again, we don't concede falsity. We never have below. We don't hear. The only problem is, and we haven't raised it in our briefing, simply because the dispositive issue here is scienter, and that's really what we're discussing here. And what's really remarkable here is I'll say the quality of the disclosures or the fulsomeness of the disclosures. So if you, in the evidentiary record, which talks about there are basically, you know, three big categories of factual statements which are factual areas which are being challenged, cadence, the synopsis, intel connection, and the M&A activity connection. So with respect to cadence, cadence, by the way, was this competitor that had been identified as a competitor, one of the big three. But throughout this entire class period, cadence had been, in effect, threatening to introduce a product. Threatening to introduce a product. And, in fact, the record shows did not actually introduce the product until right at the end of the class period. Was that that Palladium Z1? The ‑‑ I will tell you in one second, Your Honor, I get the names of the products confused. Yes, cadence was Palladium Z1. I'm glad I have my little cheat sheet here. And they didn't introduce it until right at the end. Now, the company was asked about it because everyone knew that cadence was, I'll say threatening, but saying that they were going to introduce a product. There's absolutely no specifics in this record of to what extent the potential introduction of the product had any impact on Mentor's results until at the end of the class period when they said, immediately when they said, you know what, we've seen a lot of the market freezing up because now cadence is introducing this product. Okay, but other than that, there's no specifics about how it affected Mentor. So what did Mentor do when they were asked about the cadence product that was going to be introduced? They added a risk warning, which is an entirely appropriate thing to do. You know, the courts criticize companies for having risk warnings which never change in our boilerplate. That's not what happened here. Mentor said, okay, well, cadence is kind of stirring up the market a little bit with a potential new product. Let's put a risk warning in there which says that when other competitors are talking about introducing a new product, that could have, that's a risk to us, that can have an impact on our results because there was no other way to quantify what was going on. That's actually what they should have done. And what else did they do? They said, you know what, we think we have a better product than cadence, and this isn't a direct quote, but this is a quote, we're always wary of cadence and they could come up with a product which could impact us. So basically, they did what they should have done. With respect to synopsis, let me just say, and I said this a moment ago so I won't repeat it, but it was clear as day that synopsis was a competitor. They came out and they said in the record that I just read to you, they said there are three competitors, synopsis, cadence, and mentor. There was no hiding. Well, why did mentor repeatedly characterize the risk of customer consolidation and introduction of competitive products as merely potential or contingent? I mean, they're arguing you actually knew that, so why are they always phrasing it as potential? Well, two responses, Your Honor. Number one is a risk factor could be a risk factor even though there are certain aspects of it which materializing. Now, in this record, there had not been the introduction of the factor, but there could be other competitors who are also potentially. You know, it's just like every company has a risk warning. A high-tech company has a risk warning saying we could be involved in patent litigation or people could challenge our IP. And the company had one of those in this case, too. And it was in the middle of IP litigation. Just because they were in the middle of patent litigation doesn't mean that risk goes away as a risk. That risk is still a very accurate risk, either in the case with synopsis or in many other cases. I see I'm getting a little low on time, so let me just. Let me ask you one quick question. Why, if you knew, if Mentor knew by, say, May of 2013 it was likely to lose Intel's business, why did it wait until February of 2015 to make that disclosure? I think it was within that time period that they were. Mentor was discussing how they do one year at a time, and it was in that year and that period where they were disclosing what the impact would be. And, wow, were they open about it. I mean, in the evidentiary record, supplemental evidentiary record, pages 78 through 83, I'll just read a few of the ways that they were open. They just said, this guidance, this is for fiscal year 2015, includes no emulation product revenue from our historically largest emulation customer. And then they say, because we are making up for a loss in some of the momentum, we still believe that we will have overall growth, but we'll be swimming uphill. Why? Because they lost Intel. And then Mr. Reins goes on to say, we're currently only forecasting this coming year. We have no indications of growth from the largest customers, so our growth has to come from other sources. He was as forthcoming as you possibly could. And I think he was discussing Intel in the year in which the impact hit. And as Your Honor pointed out, that was three quarters before there was a stock drop. Let me also say that with respect to what's really remarkable with respect to the disclosure, with respect to M&A, I don't have time to read into the record or point it out to Your Honor, but there was just real fulsome disclosure. And it wasn't a black and white disclosure. It wasn't a sky is blue or red disclosure. It was, here's what we think happens when there's consolidation in the industry. And it went on and on for pages raised by the company itself. So with all of that quality of disclosure, I'll say, with the fact that the trading is definitely the trading of stock, which is referenced by the plaintiffs, definitely is not within the parameters of what this court or many other courts says is indicative of say-enter. And the fact that they were not really concealing things but fulsomely disclosing, I don't think there's a strong inference of say-enter, and I think this court can come to that conclusion as well. So defendants now say the statements are not materially false. I think it's important to point out that the district court's findings of falsity, materiality, and that they knowingly omitted false statements were called by defendants to be adopted in their entirety. You can't omit false statements. You can make false statements. They knowingly omitted material facts that made their statements false. Okay. Sorry. And I would point the court to the excerpts of record 21 to 22, 24, 44, and 47, in which the district court, I guess it's the magistrate adopted by the district court, goes through all the knowledge that defendants had and the statements that were false, including the risk warnings, and this is in their earlier findings and recommendations. Counsel keeps talking about the fulsomeness of their disclosures, but the defendants found these statements, opinions, and their risk warnings to be false and misleading. But that doesn't get you where you need to be, because you also need to persuade us that the finding that say-enter wasn't sufficiently pled was erroneous. Exactly. So I was hoping where we can start is these are materially false statements. Defendants knew they were false because they made material omissions, knowingly material omissions. And under this court's holdings and quality systems, which reiterated the holdings in Reese and Align in earlier cases, knowing access to disputed facts raises a strong inference of say-enter. Burson talks about contemporaneous knowledge of their statements are false, raises a strong inference of say-enter. And none of these cases and none of this court's cases hold that that can be excused by optimism, hoping that eventually good news will overtake bad. So is your argument that once the district court found that there were knowing statements of material fact, it had to say that no inference was raised or that the inference was rebutted? So what is your argument in terms of how the district court erred in its say-enter ruling? Once the court found that defendants knew their statements were false, that is a compelling inference of say-enter. What page of the opinion makes that state finding? 44, ER 44, I believe. 44. Knowingly omitted material facts. Knowingly omitted material facts. So you're saying that if the court found that there was a knowing omission of material facts, a strong inference of say-enter is raised. Exactly. What case says that? On a knowing omission of material facts, a strong inference of say-enter is raised. What case says that? Well, qualia systems talks about how actual access to disputed information, so knowing the information and then making a false statement. No, you said your statement was knowing omission of material facts raises a strong inference of say-enter. Yes. So I'm asking you for that precise. What case has that precise language in it? Okay, that's my language, but what I'm talking about is defendants have actual access to disputed information. They're making false statements. They have contemporaneous knowledge that a statement was false when made. So you're trying to persuade us that the district court erred in determining that you failed to adequately please say-enter, right? So I'm asking you what case support do you have to support your argument that this was a legal error? And the third case I would point to is Silicon Graphics, where a highly unreasonable omission, which presents a danger of its leading investors that is either known to defendants or so obvious they must have been aware of it. Here, where defendants knew they were omitting material facts, the danger is obvious that investors would be misled. You know, counsel, I'm looking at page 44 of the magistrate judge's opinion. It's not quite what you say is. I read it says that a finder of fact could reasonably find on the basis that it was false. They're just saying that's within the range of what a jury could find. But then goes on to, however, I find that the non-culpable alternative inference more compelling. But it's not like the magistrate judge made a factual finding that what the defendant said was false. Right, right. It's not a factual finding. We're at the pleading stage. And so a reasonable inference is a reasonable inference. Right. Well, that's a little different than what you had said. Okay, I understand. So I'm talking about at the pleading stage, a reasonable inference that defendants not only made material, not only made, not only omitted material facts. Right. That's an inference that could be drawn. And what the court, how the court erred was saying that that's not enough for Sienter because they were somehow optimistic down the road that things were going to work out. There's a disconnect to me because I'm still looking for a case that says that constitutes legal error on the part of the judge to say that there's an inadequate pleading on Sienter. I'm not. Okay, so I guess perhaps the best case then is Shoneman v. Arena Pharmaceuticals. In that case, the defendants failed to disclose a dispute with the FDA regarding this rat study. They were confident the FDA was going to approve the drug down the road, but they failed to disclose something that they knew, a known dispute with the FDA. And this court found that established Sienter because they intentionally withheld information, material to the market's assessment of whether or not the FDA would ultimately approve the drug. So I would point the court to that case. All right, thank you. Thank you. All right, counsel, you've over your time. Thank you very much.  The matter is submitted.
judges: Gilman, Paez, Rawlinson